Martin F. Casey
Gregory G. Barnett
**CASEY & BARNETT, LLC**
305 Broadway, Ste 1202
New York, New York 10007
(212) 286-0225
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
HDI GLOBAL SE a/s/o DAIMLER AG and a/s/o
MERCEDES BENZ USA LLC                                                    19 Civ.

        Plaintiff,
                                                                                                    **COMPLAINT**
   - against -

M/V HONOR her engines, tackle, boilers, etc.,
*in rem;* FIDELIO LIMITED PARTNERSHIP INC.;
AMERICAN ROLL-ON ROLL-OFF CARRIER
LLC; and INTERNATIONAL AUTO LOGISTICS,
INC.

        Defendant.
------------------------------------------------------------X

      Plaintiff, HDI GLOBAL SE a/s/o DAIMLER AG and a/s/o Mercedes-Benz USA LLC, by and through its attorneys, Casey & Barnett LLC, as and for its Complaint, alleges upon information and belief as follows:

### JURISDICTION

      1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and within the meaning of 28 U.S.C. § 1333.

      2.    Venue is proper and this Court has jurisdiction over the defendants on the basis of their systematic and continuous business contacts and presence in the United States and this District, as well as their status as parties to agreements providing for the selection of this Court as a forum for resolution of disputes relating to the subject matter of this lawsuit.

## PARTIES

3. At all material times, HDI Global SE (hereinafter "HDI" or "Plaintiff") was and is a corporation with an office and place of business located at HDI-Platz 1, Hannover 30659 Germany and is the lead subrogated underwriter of a consignment of Daimler vehicles which suffered physical damage while laden on board the M/V HONOR, as more specifically described below.

4. At all material times, DAIMLER AG (hereinafter "Daimler" or "Plaintiff") was and is a corporation with its principal place of business located at Siemenstrasse 7, Stuttgart 70469 Germany and was the owner and/or shipper of various new vehicles laden aboard the captioned vessel, as more specifically described below, which suffered physical damage while on board the M/V HONOR.

5. At all material times, MERCEDES BENZ USA LLC (hereinafter "Daimler" or "Plaintiff") was and is a limited liability company with its principal place of business located at One Mercedes Benz Drive, Sandy Springs, Georgia 30328 and was the owner and/or receiver of various new vehicles laden aboard the captioned vessel, as more specifically described below, which suffered physical damage while on board the M/V HONOR.

6. At all material times, defendant, Fidelio Limited Partnership, Inc.. (hereinafter "Vessel Defendant" or "Fidelio") was and is a corporation with an office and place of business located at 188 Broadway, Suite 1, Woodcliff Lake, New Jersey 07677 and at all relevant times, was and is still doing business within the jurisdiction of this Honorable Court and was the registered owner of the M/V HONOR.

2

7. At all material times, defendant, American Roll-On Roll-Off Carrier LLC (hereinafter "Vessel Defendant" or "American Carrier") was and is a limited liability company with an office and place of business located at 1 Maynard Drive, 3rd Floor, Park Ridge, New Jersey 07656 and at all relevant times, was and is still doing business within the jurisdiction of this Honorable Court and was the beneficial owner and operator of the M/V HONOR.

8. At all material times, defendant M/V HONOR (hereinafter "the Vessel" or "Vessel Defendant") is an ocean going car carrier owned and operated by defendants, as more specifically described above, that carried vehicles which are the subject matter of this lawsuit, from Europe to the United States.

9. At all material times, defendant, International Auto Logistics, Inc. (hereinafter "Cargo Shipper Defendant" or "IAL") was and is a corporation with an office and place of business located at 110 Office Park Lane, Suite 200, San Simon's Island, Georgia 31522 and at all relevant times, was and is still doing business within the jurisdiction of this Honorable Court as a shipper of vehicles to the United States, and was the named shipper of a certain Nissan Rogue personally owned vehicle ("POV") that was the initiating cause of the fire on board the vessel, as more specifically described below.

10. Plaintiff brings this action on its own behalf and as agent and/or trustee on behalf of and for the interest of all parties who may be or become interested in the said consignments, as their respective interests may ultimately appear, and plaintiff is entitled to maintain this action.

## **RELEVANT FACTS**

11. During February 2017, consignments consisting of various personally owned vehicles (hereinafter "POVs"), were delivered to the Vessel and to the Vessel Defendants and/or their agents in Bremerhaven, Germany and/or Southampton, England for delivery to Baltimore,

3

Maryland, Galveston, Texas, Brunswick, Georgia and Charleston, South Carolina, including a Nissan Rogue vehicle, more specifically described below. Bills of lading for these vehicles were issued by defendant ARC and/or non-party Wallenius Wilhelmsen Logistics to, *inter alia*, defendant IAL.

12.     On or about February 21, 2017, a consignment consisting of 600 new Daimler vehicles, then being in good order and condition, were delivered to the M/V HONOR and to the Vessel Defendants and/or their agents in Bremerhaven, Germany for transportation to Baltimore, Maryland, all in consideration of an agreed upon freight, pursuant to Wellenius Wilhelmsen Lines seaway bill number MCB705BAL01 dated February 21, 2017.

13.     On or about February 21, 2017, a consignment consisting of 150 new Daimler Sprinter HiVans, then being in good order and condition, were delivered to the M/V HONOR and to the Vessel Defendants and/or their agents in Bremerhaven, Germany for transportation to Baltimore, Maryland, all in consideration of an agreed upon freight, pursuant to Wellenius Wilhelmsen Lines seaway bill number MCB705BAL02 dated February 21, 2017.

14.     Thereafter, the aforementioned consignments of Daimler vehicles were loaded aboard the M/V HONOR and the vessel departed Bremerhaven.

15.     The last consignment of vehicles were loaded on board the Vessel in Southampton and the Vessel departed from Southampton on February 23, 2017, destined for the United States.

16.     In the early morning hours of February 24, 2017 a fire broke out on board the subject vessel in the upper vehicle cargo deck, commonly known on the vessel as the "Garage Deck".

17. The fire was put out by the vessel's crew utilizing the fire fighting system on board the vessel. The Cargo Holds in Zone A, including the Upper Deck (Garage) and Deck nos. 1 through 3 were flooded with $CO_2$ and the vehicles in those holds suffered damage as a result of the fire.

18. After the fire was extinguished the vessel returned to Southampton for inspection by authorities before ultimately continuing on to the United States for discharge of her cargo.

19. Certain of the Daimler vehicles were not in the same good order and condition when discharged as they had been when first delivered to the M/V HONOR and the Vessel Defendants. To the contrary, certain of the 600 Daimler vehicles as well as certain of the 150 Daimler Sprinter HiVan vehicles were physically damaged as a result of the fire.

20. Due to the manner in which the vehicles were eventually discharged in Baltimore by Vessel Defendants and/or their agents, Daimler was unable to distinguish which vehicles had been stowed in Zone A of the Vessel, and thus affected by the fire and/or discharge of $CO_2$. Thus, additional costs and expenses were incurred in sorting and cleaning all Daimler vehicles.

21. The costs incurred By Daimler in inspecting, surveying, repairing, and salvaging the Daimler vehicles, and the reduced valuations of said vehicles due to the damage sustained as a result of the fire on board the M/V Honor resulted in damages to Plaintiff in the approximate amount of $1,250,000.00.

22. Upon information and belief, the origin of the fire has been attributed to a 2010 Nissan Rogue vehicle, VIN number JN8AS5MT9AW023490 ("hereinafter "Subject Nissan vehicle") that was loaded in Bremerhaven, Germany and carried on board the vessel pursuant to bill of lading no. AROFDEBRH088984 dated February 20, 2017 issued by ARC and which bill of lading lists Cargo Shipper Defendant IAL as the shipper of the said vehicle.

23. The Subject Nissan Vehicle purportedly had either battery issues or starter issues while stored at the marine terminal in Bremerhaven prior to loading on board the M/V Honor.

24. Upon information and belief, the Vessel Defendants failed to take any action or conduct any inspections to determine whether the Subject Nissan Vehicle was safe for transit on board a RoRo vessel transiting the Atlantic Ocean as a result of the aforementioned issues with the Subject Nissan Vehicle.

25. Upon information and belief, defendant IAL failed to properly inspect the Subject Nissan Vehicle or otherwise ensure that it the vehicle was safe for transit on board a RoRo vessel transiting the Atlantic Ocean.

26. At all times relevant hereto, a contract of insurance for property damage was in effect between Daimler and HDI, which provided coverage for, among other things, loss or damage to the subject Daimler vehicles.

27. Pursuant to the aforementioned contract of insurance between Daimler and HDI, monies have been expended on behalf of Daimler to the detriment of HDI due to the damages sustained to the Daimler vehicles during the subject transit on board the M/V HONOR.

28. As HDI has sustained damages as a result of said expenditures, expenditures rightly the responsibility of defendants, HDI has an equitable right of subrogation and is subrogated, to the extent of its expenditures, to the rights of its insured, Daimler, with respect to any and all claims for damage against the defendants.

29. By reason of the foregoing, plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be $1,250,000.00.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST VESSEL DEFENDANTS- BREACH OF CONTRACT

30.     The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 29, inclusive, as if herein set forth at length.

31.     Pursuant to the contract entered into between the parties, Vessel Defendants owed a contractual and statutory duty to the Plaintiff, to carry, bail, keep and care for, protect and deliver the Plaintiff's cargo in the same good order and condition as at the time said defendant first accepted custody and control of the goods.

32.     The Vessel Defendants breached their contractual and statutory duties by failing to properly care for, bail and protect the Plaintiff's cargo in the same good order and condition as at the time said defendant first accepted custody and control of the goods.

33.     As a direct and proximate result of said breach of contract by the Vessel Defendants, the Plaintiff has suffered damages in the amount presently estimated to be no less than $1,250,000.00.

34.     By reason of the foregoing, the Plaintiff has sustained losses which will be shown with more specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $1,250,000.00.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST VESSEL DEFENDANTS- BREACH OF BAILMENT

35.     The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 34, inclusive, as if herein set forth at length.

36.     Pursuant to its obligations as a bailee for hire of the Plaintiff's cargo, the Vessel Defendants owed contractual and statutory duties to Plaintiff to carry, bail, keep and care for,

protect and deliver the Plaintiff's cargo in the same good order and condition as at the time said defendant first accepted custody and control of the goods.

37. The Vessel Defendants breached their duties as bailees for hire by failing to properly carry, bail, keep and care for, protect and deliver the Plaintiff's cargo in the same good order and condition as at the time said defendant first accepted custody and control of the goods.

38. As a direct and proximate result of the breach of bailment by the Vessel Defendants, the Plaintiff has suffered damages in the approximate amount of $1,250,000.00.

39. By reason of the foregoing, the Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $1,250,000.00.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST VESSEL DEFENDANTS- NEGLIGENCE

40. The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 39, inclusive, as if herein set forth at length.

41. The Vessel Defendants owed a duty to the Plaintiff to carry, bail, keep and care for, protect and deliver the Plaintiff's cargo in the same good order and condition as at the time said defendant first accepted custody and control of the goods.

42. The Vessel Defendants breached and were negligent in their duty to carry, bail, keep and care for, protect and deliver the Plaintiff's cargo in the same good order and condition as at the time said defendant first accepted custody and control of the goods.

43. As a direct and proximate result of the negligence by the Vessel Defendants, the Plaintiff has suffered damages in the approximate amount of $1,250,000.00.

44. By reason of the foregoing, the Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $1,250,000.00.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST VESSEL DEFENDANTS - M/V HONOR WAS UNSEAWORTHY

45. The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 44, inclusive, as if herein set forth at length.

46. Prior to, and at all times relevant hereto, the Vessel Defendants failed to exercise due diligence to make the M/V HONOR seaworthy. The M/V HONOR was at all relevant times not fit to undertake the service in which she was engaged. The losses suffered by or in connection with Plaintiff's cargo were caused in whole or in part by the Vessel Defendants' failure to exercise due diligence to make the M/V HONOR seaworthy at the commencement of the voyage.

47. The losses suffered by or in connection with Plaintiff's cargo, as well as the fire which occurred on board the vessel on February 24, 2017 off Southampton, England were caused in whole or in part by the fault, design or neglect, or want of care of the Vessel Defendants and/or the M/V HONOR, and/or those in charge of the M/V HONOR, and/or persons for whom Vessel Defendants are responsible.

48. The losses suffered by or in connection with Plaintiff's cargo, as well as the subject casualty, resulted from causes within the privity and knowledge of the Vessel Defendants, and/or their officers, directors, managers, supervisors, superintendents and/or such persons whose privity and knowledge or imputable to the Vessel Defendants.

49. As a direct and proximate result of the aforesaid unseaworthiness resulting from the Vessel Defendants actions, or failure to act, the Plaintiff has suffered damages in the approximate amount of $1,250,000.00.

50. By reason of the foregoing, the Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $1,250,000.00.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST CARGO SHIPPER IAL - STRICT LIABILITY

51. The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 50, inclusive, as if herein set forth at length.

52. Defendant IAL as a shipper of the aforesaid Subject Nissan Vehicle, had a statutory duty to other shippers of cargo laden on board the M/V HONOR to ensure that the 2010 Nissan Rogue was in good order and condition in all respects for the transit from Europe to the United States.

53. Defendant IAL, as a cargo shipper, is strictly liable for any and all damages its cargo causes to other cargo properly laden on board the M/V HONOR in that the 2010 Nissan Rogue is and was a "dangerous cargo" as that term is used in Section 4(6) of COGSA.

54. Upon information and belief, the Subject Nissan Vehicle was in a defective condition at the time it was stowed on board the M/V HONOR for voyage CB705.

55. The defects that existed in the Subject Nissan Vehicle rendered it to be an unreasonably dangerous product, fraught with unexpected dangers to foreseeable users and foreseeable third-party by-standers.

56. Plaintiff suffered damages as a direct result of the fire caused by the defects that existed in the Subject Nissan Vehicle.

57. As a proximate result of the foregoing, Plaintiff has sustained damages in the amount of no less than $1,250,000.00.

58. By reason of the foregoing, the Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $1,250,000.00.

## AS AND FOR A SIXTH CAUSE OF ACTION AGAINST CARGO SHIPPER IAL - NEGLIGENCE

59. The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 58, inclusive, as if herein set forth at length.

60. IAL, in its capacity as the shipper of the Subject Nissan Vehicle, had a duty to other shippers of cargo laden on board the M/V HONOR to ensure that the Subject Nissan Vehicle was in good order and condition in all respects for the ocean transit from Europe to the United States.

61. Upon information and belief, the Subject Nissan Vehicle was in a defective and dangerous condition at the time it was stowed on board the M/V HONOR in Europe.

62. Upon information and belief, IAL, prior to contracting to have the Subject Nissan Vehicle transported from Europe to the United States, failed to properly inspect the said vehicle.

63. Upon information and belief, IAL failed to make sufficient efforts to inspect the Subject Nissan Vehicle or verify that it was safe for transit on board a RoRo vessel transiting from Europe to the United States.

64. The defects that existed in the Subject Nissan Vehicle rendered the vehicle to be an unreasonably dangerous vehicle, fraught with unexpected dangers to foreseeable users and to foreseeable third-party bystanders.

65. IAL breached the duties it owed to the owners of other cargoes laden on board the M/V HONOR by failing to comply with its contractual and statutory duties and obligations in respect to the Subject Nissan Vehicle prior to booking the Subject Nissan Vehicle for transit on board the M/V HONOR.

66. Plaintiff suffered damages as a direct result of the fire caused by the defects that existed in the Subject Nissan Vehicle.

67. As a proximate result of the foregoing, Plaintiff has sustained damages in the amount of no less than $1,250,000.00.

68. By reason of the foregoing, the Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $1,250,000.00.

**WHEREFORE,** Plaintiff prays:

1. That process in due form of law may issue against Defendants citing them to appear and answer all and singular the matters aforesaid;

2. That judgment may be entered in favor of Plaintiff against Defendants for the amount of Plaintiff's damages in the amount of at least $1,250,000.00, together with interest, costs and the disbursements of this action; and

3.     That this Court grant to Plaintiff such other and further relief as may be just and proper.

Dated: New York, New York
       January 30, 2019
       461-09

                                                **CASEY & BARNETT, LLC**
                                                Attorneys for Plaintiff

                                  By:   _/s/ Martin F. Casey_
                                                Martin F. Casey
                                                Gregory G. Barnett
                                                305 Broadway, Ste 1202
                                                New York, New York 10007
                                                (212) 286-0225